Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LATEEFAH HENDERSON,**<br><br>Plaintiff,<br><br>v.<br><br>**NEWARK BOARD OF EDUCATION,** *et al.*<br><br>Defendants. | Civil Action No.: 23-23184 (ES) (JBC)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants Newark Board of Education and Malcolm X. Shabazz High School's motion to dismiss the Complaint of Plaintiff Lateefah Henderson (D.E. No. 1, Exhibit A to the Notice of Removal ("Complaint" OR "Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 6 ("Motion")). Plaintiff asserts claims for violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 ("NJLAD"), violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, breach of contract, violation of the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-3, *et seq.*, negligence, and violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* ("FMLA"). (Compl.). The Court has carefully considered the parties' submissions and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion is **GRANTED.**

1

I.  **BACKGROUND**

   A.  **Factual Background**[1]

According to the Complaint, Plaintiff Lateefah Henderson has been employed by Newark Public Schools ("NPS") since 2011.  (Compl. ¶¶ 1–3).  She began as a "Skilled Trades Teacher" at Malcolm X Shabazz High School, and has also "served NPS as a high school Culinary Arts Teacher and Special Education Resource English Teacher," though she asserts that she "lack[ed] the specific credentials for teaching special needs students in the subjects of English, English I, and English II."  (*Id.* ¶¶ 3–4).  In these roles, Plaintiff was supervised by Ms. Yakima Johnson.  (*Id.* ¶ 4).  Plaintiff alleges that "[i]n the 2020-2021 academic year, following the tragic death of a student who was also a close family member, the Plaintiff's request for bereavement leave and time to attend the funeral was denied by Ms. Johnson without justification."  (*Id.* ¶ 7).

Next, Plaintiff notes that "[a]t the conclusion of the 2021-2022 school year, due to health issues and stress, [she] was medically advised to take a Family and Medical Leave of Absence," but that during medical leave, she "was incessantly contacted and forced to work by Ms. Johnson and Ms. Lawson."[2]  (*Id.* ¶¶ 8–9).  Plaintiff adds that "the Defendant[3] informed the Plaintiff to return to work despite her not being medically cleared by her physician" and that she, "driven by fear of termination, reluctantly returned to work."  (*Id.* ¶ 9).  Plaintiff asserts that she "was instructed by HR to report back to Malcolm X Shabazz High School on August 31, 2021," but that when she arrived, she was told by the principal that there was no assignment for her.  (*Id.* ¶ 10).  Plaintiff asserts that she "return[ed] from leave of absence" on September 6, 2021, at which time

---

[1]   The following allegations are taken from the Complaint, which the Court accepts as true for the purposes of deciding Defendants' motion to dismiss.

[2]   Plaintiff does not identify who Ms. Lawson is or refer to her again in the Complaint.

[3]   Plaintiff does not identify to which Defendant she is referring.

she was "transferred, without her consent, from a high school to an elementary school setting, which violated her contract." (*Id.* ¶¶ 11–12).

According to the Complaint, Plaintiff's new assignment was Cleveland Elementary School, where she "was directed by Ms. Johnson to instruct an 8th-grade LCS Special Education class, a role she was unprepared to undertake due to lack of the appropriate credentials." (*Id.* ¶ 13). Plaintiff asserts that her new classroom and school were lacking in resources and were in a state of disrepair, and that "[i]n the following months, [she] was frequently reassigned to different classes without adequate preparation time, sufficient resources, or a clear timetable." (*Id.* ¶¶ 14–16). Plaintiff states that "[d]espite raising concerns about these issues, [she] did not receive any substantive support or solutions from [her] superiors," and that she "reported the issues she faced to the relevant agencies; however, this was followed by retaliatory actions rooted in racial discrimination." (*Id.* ¶¶ 17–18).

Plaintiff adds that "[t]here is substantial evidence supporting a claim of racial discrimination. Specifically, despite possessing greater seniority than three newly hired non-African American Culinary Arts teachers, the Plaintiff was not promoted while the aforementioned individuals were." (*Id.* ¶ 19). To further support this assertion, Plaintiff alleges that "Ms. Johnson, a representative of the Defendant, . . . displayed intrusive conduct, including modifying the Plaintiff's Individual Professional Development Plan (IPDP) goals without [her] consent and unjustly rating [her] as 'Ineffective' during a teaching evaluation"; and that "Plaintiff has been unfairly reprimanded for absenteeism and 'Neglect of Duty,' despite carrying out her duties to the best of [her] ability under challenging circumstances." (*Id.* ¶¶ 20–21). Finally, Plaintiff states that

3

her "applications for medical leave, necessitated by health issues and stress, have been consistently denied, further heightening [her] anxiety." (*Id.* ¶ 23).

### B.     Procedural History

Based on the forgoing facts, on July 31, 2023, Plaintiff filed suit against Defendants in the Superior Court of New Jersey, Law Division, Essex County. (Compl.). Plaintiff asserts claims for: (i) discrimination under NJLAD (Counts I–III & Count X) and Title VII (Count XI); (ii) breach of contract (Count IV); (iii) violation of CEPA (Count V); (iv) state law negligence (Count VI); and (v) violation of the FMLA (Count VIII).[4] Defendants removed the case to this Court on December 18, 2023, under Federal Question jurisdiction pursuant to 28 U.S.C. § 1331. (D.E. No. 1). On January 9, 2024, Defendants filed the instant Motion to dismiss the Complaint. (Motion; *see also* D.E. No. 6-1 ("Mov. Br.")). The Motion is fully briefed. (*See* D.E. No. 17 ("Opp. Br."); D.E. No. 20 ("Reply")).

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v.*

---

[4]     The Complaint appears to skip from labeling negligence as Count VI to labeling the FMLA claim as Count VIII, without labeling a Count VII. (Complaint at 10–11). The Complaint also appears to skip from labeling the FMLA claim as Count VIII to labeling the racial discrimination under NJLAD claim as Count X, without labeling a Count IX. (*See id.* at 11–12). To avoid confusion, the Court follows the labeling in the Complaint.

*Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded.  *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The burden is on the moving party to show that the plaintiff has not stated a facially plausible claim.  *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

A complaint must also meet the pleading requirements of Rule 8.  Rule 8 requires that a complaint set forth the plaintiff's claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).  Thus, the complaint must contain "sufficient facts to put the proper defendants on notice so that they can frame an answer" to the plaintiff's allegations.  *See Dist. Council 47 v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986).  As part of this notice pleading, a complaint must plead enough facts to "raise a reasonable expectation that discovery will reveal evidence of the [necessary element]."  *Twombly*, 550 U.S. at 556.

In evaluating a plaintiff's claims under Rule 12(b)(6), the Court considers the allegations in the complaint, as well as the documents attached thereto and specifically relied upon or incorporated therein.  *See Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)) (internal quotation marks omitted)).

### III. DISCUSSION

#### A. Federal Claims

##### i. FMLA Claims (Count VIII)

The Complaint asserts violation of the FMLA because (i) "[d]espite the Plaintiff's eligible status and proper notification, the Defendant denied Plaintiff's rightful request for FMLA leave"; and (ii) "the Defendant retaliated against the Plaintiff for attempting to exercise [her] right to take FMLA leave by intensifying the hostile work environment, increasing the harassment, and unfairly reassigning the Plaintiff to roles [she was] unqualified and unprepared for." (Compl. ¶¶ 31–32, at 11).[5]

The primary purposes behind the FMLA are to (i) "balance the demands of the workplace with the needs of families" (ii) "entitle employees to take reasonable leave for medical reasons" (iii) "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(1)-(3). To achieve these goals, two types of provisions are contained within the FMLA.

First, "the 'entitlement' or 'interference' provisions . . . set floors for employer conduct." *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005). Eligible employees "shall be entitled to a total of [twelve] workweeks of leave during any [twelve]-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Following a qualified absence, the employee is entitled to be reinstated to the former position or an alternate one with equivalent pay, benefits, and working conditions. 29 U.S.C. § 2614(a)(1). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615. "Such a claim is typically referred to as an interference

---

[5]    Plaintiff does not clarify which Defendant she is referring to by "the Defendant."

claim." *Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) (quotations omitted). "To assert an interference claim, the employee only needs to show that [s]he was entitled to benefits under the FMLA and that [s]he was denied them." *Id.* (quotation omitted); *see also* 29 C.F.R. § 825.220(b) ("Any violations of the Act or of these regulations constitute interfering with . . . the exercise of rights provided by the Act.").

Second, the "retaliation" or "discrimination" provisions protect an employee from discrimination for using their substantive FMLA rights. *See* 29 U.S.C. § 2615(a)(1) and (2); 29 C.F.R. § 825.220(c) ("The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."). Employers may not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c). To set forth a claim of retaliation, an employee must show that "(1) [s]he took an FMLA leave, (2) [s]he suffered an adverse employment decision, and (3) the adverse decision was causally related to h[er] leave." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004).

Here, the Complaint appears to assert both an interference claim and a retaliation claim. Defendants move to dismiss Plaintiff's FMLA claims. First, Defendants argue that Plaintiff fails to sufficiently allege an FMLA interference claim "because she failed to establish that her rights to FMLA were denied." (Mov. Br. at 18). More specifically, Defendants argue that Plaintiff's allegations regarding FMLA leave are "vague and conclusory," and that "Plaintiff's Complaint is devoid of any fact to show she was actually denied leave under FMLA" because "Plaintiff, by her own admissions, seems to have taken FMLA leave as she alleged that she 'returned on September 6, 2021' and refers to acts that happened 'during [her] medical leave.'" (*Id.* at 19). Defendants

7

contend that "[e]ven if Plaintiff was contacted during her leave, she fails to assert any facts about the manner in which she was contacted and what she was allegedly 'forced' to do," and assert that Plaintiff's allegations regarding FMLA leave cannot be taken as true because they contradict each other "as one requires her to have been denied FMLA leave and the other requires her to have taken FMLA leave." (*Id.*).  Plaintiff responds that the Complaint "alleges FMLA violations where [Plaintiff's] rightful medical leave requests were denied," and that "the wrongful denial of FMLA leave, as alleged, constitutes a clear violation of [Plaintiff's] rights to medical leave for serious health conditions, which are protected under FMLA."  (Opp. Br. at 2 & 6).  Plaintiff adds that she was "forced to return to work under duress while medically unfit, a scenario that starkly violates the provisions of FMLA that protect employees from such coercion."  (*Id.* at 6).

Second, Defendants argue that Plaintiff fails to sufficiently allege an FMLA retaliation claim.  Regarding retaliation, the Complaint alleges that "Defendant retaliated against the Plaintiff for attempting to exercise [her] right to take FMLA leave by intensifying the hostile work environment, increasing the harassment, and unfairly reassigning the Plaintiff to roles [she was] unqualified and unprepared for."  (Compl. ¶ 32, at 11).  Defendants argue that Plaintiff's FMLA retaliation claim must be dismissed because "she has not shown that she followed appropriate FMLA notification procedures or faced any adverse action for taking leave."  (Mov. Br. at 19). Defendants add that "[t]hough [Plaintiff] describes a series of events upon her return from leave, she fails to allege how these may have had a negative impact on her employment and therefore cannot be considered adverse."  (*Id.* at 21).  In response, Plaintiff argues that "shortly after [Plaintiff's] complaints regarding the discriminatory practices and her subsequent filing for FMLA leave due to stress and health issues, [Plaintiff] was subjected to intensified scrutiny, unjust reassignments, denial of medical leave, and other retaliatory behaviors by her supervisors.  Such

8

timing is more than coincidental; it strongly suggests a retaliatory motive on the part of the Defendant, Newark Public School (NPS)." (Opp. Br. at 5). Plaintiff additionally argues that she experienced adverse employment actions in the form of "unwarranted disciplinary actions." (*Id.* at 6). Finally, Plaintiff asserts that

> Each of these actions directly altered the terms, conditions, and privileges of [Plaintiff's] employment. Demotions typically come with reduced responsibilities and possibly reduced pay, affecting her career trajectory and earnings. Similarly, unwarranted disciplinary actions can tarnish an employee's professional reputation and can lead to further unjust treatment or even termination, which starkly affects one's employment conditions and future employment opportunities.

(*Id.*). For the following reasons, the Court finds that Plaintiff has failed to sufficiently allege an FMLA interference or retaliation claim.

"To make out a *prima facie* case of FMLA interference, [a plaintiff] must show (1) she was an eligible employee under the FMLA; (2) [the defendant] was an employer subject to the FMLA's requirements; (3) she was entitled to FMLA leave; (4) she gave notice to the defendant of his or her intention to take FMLA leave; and (5) she was denied benefits to which she was entitled under the FMLA." *Ganczarski v. Ollie's Bargain Outlet, Inc.*, No. 19-1723, 2022 WL 11860895, at *15 (M.D. Pa. Oct. 20, 2022). "To establish a retaliation claim under the FMLA, a plaintiff must first establish a prima facie case of retaliation by demonstrating that: (1) she availed herself of a protected right under the FMLA; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the plaintiff's FMLA leave." *Caruso v. Bally's Atl. City*, No. 16-5021, 2019 WL 4727912, at *5 (D.N.J. Sept. 27, 2019). FMLA retaliation claims are assessed under the same evidentiary framework as employment discrimination claims under Title VII and NJLAD. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) ("Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts

9

have assessed these claims through the lens of employment discrimination law."); *Tourtellotte*, 636 F. App'x at 841–42 (explaining that all Title VII and NJLAD retaliation claims are assessed under the same framework, and collecting cases).

Here, the factual allegations regarding FMLA leave in the Complaint are simply too sparse, confusing, and contradictory for the Court to discern a coherent narrative upon which an FMLA interference or retaliation claim could be based. The Complaint alleges that "[a]t the conclusion of the *2021-2022* school year," which would presumably be summer of 2022, "due to health issues and stress, the Plaintiff was medically advised to take a Family and Medical Leave of Absence." (Compl. ¶ 8 (emphasis added)). However, the Complaint then alleges that Plaintiff was instructed to return from leave on August 31, *2021* (*id.* ¶ 10), which would be at the conclusion of the 2020-2021 school year, not the 2021-2022 school year. And nowhere does the Complaint allege that Plaintiff properly requested and/or took FMLA leave before the 2020-2021 school year. Further, the Complaint alternates between stating that Plaintiff's requests for FMLA leave were denied and stating that Plaintiff took FMLA leave but was forced to return early. (*Compare* Compl. ¶ 9 ("During [her] medical leave, the Plaintiff was incessantly contacted and forced to work by Ms. Johnson and Ms. Lawson.") *with id.* ¶ 31 ("Despite the Plaintiff's eligible status and proper notification, the Defendant denied Plaintiff's rightful request for FMLA leave.")). These are unexplained contradiction that the Court is unable to resolve based on the facts of the Complaint as currently pled. On the whole, the factual narrative set forth by the Complaint does not clearly explain (i) when Plaintiff took FMLA leave; (ii) whether Plaintiff's request for FMLA leave was granted or denied; (iii) if Plaintiff's FMLA leave was granted or denied, how and when the request was granted or denied; (iv) Plaintiff's eligibility for FMLA leave; (v) whether Plaintiff followed appropriate FMLA procedures in requesting leave; and (vi) when, after Plaintiff took or requested

leave, Defendants' alleged retaliatory acts took place. And Plaintiff's opposition does not clarify the factual narrative or, indeed, cite to the Complaint at all. (*See generally* Opp. Br.).

Because of the Complaint's sparse, confusing, and contradictory allegations, the Court simply cannot discern a viable FMLA interference or retaliation claim. *See Muti v. Schmidt*, 96 F. App'x. 69, 74 n.2 (3d Cir. 2004) (noting that the District Court need not accept "conclusory allegations set forth in a complaint . . . when those allegations are belied by the complaint's remaining factual allegations"); *Ouaziz v. City of Jersey City*, No. 22-4546, 2022 WL 17400934, at *2 (D.N.J. Dec. 2, 2022) (finding that a complaint did not comply with Rule 8 where it "fail[ed] to provide a clear narrative of either the factual or legal basis for Plaintiff's claims"); *Olexsak v. Jones*, No. 21-20026, 2022 WL 2980985, at *5 (D.N.J. July 28, 2022) ("Plaintiff's claims . . . fall far short of adequately specifying what cognizable causes of action are actually being asserted because he fails to provide a clear narrative of either the factual or legal basis for his claims."); *Prater v. American Heritage Federal Credit Union*, No. 21-3566, 2021 WL 5834343, at *4 (E.D. Pa. Dec. 9, 2021) (finding that a complaint failed to comply with Rule 8 where its "allegations [were] also disjointed, in that they appear[ed] to refer to different events within the same sentence and [did] not provide a clear narrative that the Court can follow to understand the who, what, where, when and why of [its] claim[s]" (internal quotation marks omitted)); *Whaley v. City of Williamsport*, No. 24-0508, 2024 U.S. Dist. LEXIS 125649, at *9 (M.D. Pa. July 10, 2024) ("Plaintiff's amended complaint fails to meet these federal pleading requirements. Indeed, the allegations set forth in Plaintiff's amended complaint are sufficiently confusing, disjointed, and vague, thereby rendering his amended complaint incomprehensible to the Court."). Plaintiff's FMLA claims are therefore dismissed *without prejudice*.

### ii. Title VII Claims (Count XI)

The Complaint additionally asserts federal racial discrimination claims under Title VII, asserting that Defendants' "discriminatory conduct, including but not limited to discriminatory job assignments, transfers, and denials of time off, were based on the Plaintiff's race, in violation of Title VII. (Complaint ¶ 42, at 13).[6] Defendants argue that Plaintiff's racial discrimination claims warrant dismissal because (i) "Plaintiff cannot show that Defendants had a discriminatory motive"; (ii) "[t]o the extent that Plaintiff sets forth a disparate impact claim, the claim must be dismissed as she makes no assertion to any employment practice by Defendants"; and (iii) "Plaintiff's hostile work environment fails because she cannot show that she believed the conditions of employment changed." (Mov. Br. at 11, 13, & 15). In opposition, Plaintiff argues that "[t]he Complaint lodged by [Plaintiff] establishes well-founded claims of discrimination based on race and disability. . . . These claims are substantiated by detailed descriptions of instances where [Plaintiff] was subjected to disparate treatment and a hostile work environment, [and] differentiated unjustly from her colleagues on the grounds of her racial background and disabilities." (Opp. Br. at 7). Plaintiff adds that

> the allegations include numerous examples where [Plaintiff] was assigned tasks well outside the scope of her training and expertise, such as being reassigned from her role as a high school teacher to teaching unfamiliar subjects in an elementary setting without adequate preparation or resources. These assignments were not only inappropriate given her professional background but also placed unreasonable demands on her, effectively setting her up for failure. Such treatment was distinctly different from that of her peers, who were not subjected to similar unreasonable and unmanageable workloads or expectations.

---

[6] The Complaint appears to have duplicated labeling paragraph numbers, such that there are two sets of paragraphs labeled 26 through 43. To avoid confusion, the Court will cite both the paragraph and page number that it appears on when citing to any paragraphs with duplicative labeling.

12

(*Id.*). For the following reasons, the Court agrees with Defendants: Plaintiff has failed to sufficiently allege racial discrimination under Title VII.

Title VII "prohibits employment discrimination on the basis of race, color, religion, sex, or national origin." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). It "prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Id.* Title VII discrimination claims "which rely on circumstantial evidence[] are controlled by the three-step burden-shifting framework set forth in" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016). Because it is unclear whether Plaintiff is proceeding under a disparate treatment or disparate impact theory, the Court will analyze both. *See Churchill v. Int'l Bus. Machs., Inc., Nat'l Serv. Div.*, 759 F. Supp. 1089, 1095 n.10 (D.N.J. 1991). The Court also analyzes Plaintiff's claims under a hostile work environment theory. (*See* Compl. ¶ 36 (asserting that Plaintiff suffered a hostile work environment)).

To make out a prima facie case of disparate treatment discrimination, a plaintiff must allege (i) the plaintiff belonged to a protected class; (ii) she was qualified for the position in question; (iii) she was subject to an adverse employment action; and (iv) the adverse action was taken under circumstances giving rise to an inference of discrimination. *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014). To survive a motion to dismiss, for each claim, while a plaintiff need not make out a prima facie case, she must allege enough facts that "raise a reasonable expectation that discovery will reveal evidence of the [necessary] elements." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Putting aside whether Plaintiff suffered an adverse employment action, Plaintiff's racial discrimination claims under Title VII fail because she has not adequately pled facts that could give rise to an inference of discriminatory intent. Nowhere in the Complaint does Plaintiff point to specific words or actions attributable to Defendants indicating discriminatory intent. Instead, Plaintiff offers only conclusory allegations that she was discriminated against based on her race. (*See* Compl. ¶ 42, at 14 ("The Defendant's discriminatory conduct, including but not limited to discriminatory job assignments, transfers, and denials of time off, were based on the Plaintiff's race, in violation of Title VII."); *id.* ¶ 25 ("As a result of the aforementioned incidents, the Plaintiff faced discrimination on the basis of her race. . . .")). This is insufficient to support a racial discrimination claim at the motion to dismiss stage. *See Thorpe v. Twp. of Salisbury*, No. 21-2102, 2023 WL 6214028, at *7 (E.D. Pa. Sept. 25, 2023) (noting that the plaintiff's "conclusory allegations of race discrimination . . . are not accepted as true" and finding that "[t]he [s]econd [a]mended [c]omplaint [was] devoid of any specific factual allegations that would show the Township Defendants acted 'based on' [the plaintiff's] race"); *Liggon v. Simmons Pet Food*, No. 15-1472, 2015 WL 1189561, at *3 (D.N.J. Mar. 13, 2015) ("The [c]omplaints in this case fail to allege even a single specific act by [p]laintiff's supervisors which would support [p]laintiff's claim. Plaintiff's allegation of race discrimination is plainly conclusory and as such, does not state a plausible claim for relief."); *Addison v. Amazon.com, Inc.*, No. 22-1071, 2022 WL 2816946, at *4 (D.N.J. July 19, 2022) (dismissing discrimination claim in part because "while [p]laintiff alleges in conclusory fashion that she was denied a Process Assistant position because of her age, she offers no other allegations to support that claim"); *Subh v. Sec. Guard, Inc.*, No. 23-1462, 2023 WL 8447889, at *5 (D.N.J. Dec. 6, 2023) ("Plaintiff offers only conclusory allegations that he was

14

consistently treated less favorably than employees outside his protected class. . . . Such generalized and bare allegations are insufficient to support a theory of disparate treatment discrimination.").

To be sure, Plaintiff does allege that "despite possessing greater seniority than three newly hired non-African American Culinary Arts teachers, the Plaintiff was not promoted while the aforementioned individuals were." (Compl. ¶ 19). However, Plaintiff provides no factual allegations concerning (i) the promotion she sought, (ii) her qualifications for the promotion beyond seniority, and (iii) the qualifications of the individuals allegedly promoted over her. This lack of specificity prevents the Court from making an inference of racial discrimination based on this single, sparse allegation. *See Subh*, 2023 WL 8447889, at *5 ("The Court finds, however, that [p]laintiff cannot plausibly allege disparate treatment discrimination. Plaintiff offers only conclusory allegations that he was consistently treated less favorably than employees outside his protected class. . . . Such generalized and bare allegations are insufficient to support a theory of disparate treatment discrimination."); *Emery v. Uber Techs., Inc.*, No. 20-5156, 2021 WL 941879, at *5 (D.N.J. Mar. 12, 2021) ("Emery offers no factual averments to bolster his 'threadbare' legal conclusion that Uber singled him out because of his race. . . . The only comparators Emery alleges are nameless 'white drivers' who remain with Uber despite refusing to 'submit' to riders' 'sexual fantasies/advances/schemes,' a bald assertion that does not contain any facts about such drivers, whether they ever experienced harassment from riders, or whether they are similarly situated in any relevant respect. That cannot form the basis of a disparate treatment claim."); *Roberts v. Health Partners Plans, Inc.*, No. 17-0297, 2017 WL 3310691, at *3 (E.D. Pa. Aug. 3, 2017) ("Plaintiff's complaint is devoid of any allegations, for example, that there were other employees outside of [p]laintiff's protected class (1) who were granted unpaid leave under similar circumstances, or (2) whose requests for unpaid leave were denied but the denial was not followed

by termination. In the absence of any similar allegations, [p]laintiff has not alleged facts sufficient to give rise to an inference of intentional discrimination based on [d]efendant's treatment of similarly situated individuals.").[7] Thus, Plaintiff has failed to allege racial discrimination under Title VII via a disparate treatment theory.

For the same reasons, Plaintiff's hostile work environment claim fails under Rule 12(b)(6) as well. "To prove a prima facie claim for hostile work environment under Title VII, a plaintiff must show (i) he suffered intentional discrimination because of his status in a protected class; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected him; (iv) the discrimination would detrimentally affect a reasonable person in like circumstances; and (v) the existence of respondeat superior liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). As with Plaintiff's disparate treatment claim, Plaintiff's hostile work environment claim fails due to the lack of any facts evidencing discriminatory intent. *See Acey v. InductEV*, No. 23-1438, 2024 WL 841487, at *6 (E.D. Pa. Feb. 28, 2024) ("Ms. Acey merely makes conclusory statements that InductEV intentionally discriminated against her . . . However, the Court is not required to accept legal conclusions as true at the motion to dismiss stage. . . . Notwithstanding her bare assertions that InductEV declined [Ms. Acey's suggestions] with the intent to discriminate against her, Ms. Acey has failed to plead any facts that lend this account credibility. Therefore, Ms. Acey has not stated a claim for relief on the basis of a hostile work environment."); *Kocher v. McDonough*, No. 22-3808, 2023 WL 3689702, at *5 (E.D. Pa. May 26. 2023) ("Absent specific examples showing that Boxer had discriminatory intent, Kocher's allegations simply suggest that Boxer was a bad boss with personal animosity towards her—and

---

[7]   And the Complaint itself seems to acknowledge that the comparator allegation is in no way definitively indicative of discriminatory intent, as the Complaint follows up the allegation by stating that "[t]his discrepancy in treatment raises serious *concerns* of *potential* racial discrimination. (Compl. ¶ 19 (emphasis added)).

conduct motivated by a bad working relationship does not give rise to a hostile work environment claim under Title VII.").

Finally, if Plaintiff is proceeding under a disparate impact theory, such a theory fails as well. "In a disparate impact case, the plaintiff must demonstrate that a facially neutral policy or practice by an employer has a disparate impact on the plaintiff's [race]." *Churchill*, 759 F. Supp. at 1095 n.10; *see also Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 645–46 (1989). "Unlike a disparate treatment case, proof of discriminatory intent is not required. Rather, to prove a claim, the plaintiff must show that a specific employment practice has a substantially disproportionate impact on the protected class." *Churchill*, 759 F. Supp. at 1095 n.10. Here, Plaintiff has not identified any facially neutral policy or practice which she alleges has a substantially disproportionate impact on African-Americans. Thus, any claim of disparate impact fails.

In sum, Plaintiff's racial discrimination claims under Title VII (Count XI) are dismissed *without prejudice*.[8]

### B.  State Law Claims

"[F]ederal courts have an independent obligation to address issues of subject matter jurisdiction *sua sponte* and may do so at any stage of the litigation." *Abuhouran v. KaiserKane, Inc.*, No. 10-6609, 2012 WL 4027416, at *2 (D.N.J. Sept. 12, 2012). Under 28 U.S.C. § 1367, "[w]hen a court has dismissed all claims over which it had original federal-question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims"; the court in such a case may dismiss the matter or choose to remand the remaining state law claims back to state court. *See id.*; 28 U.S.C. § 1367(c)(3); *Whittaker v. CCIS N. of Phila.*, No. 10-1095, 2010 WL 1644492, at *2 (E.D. Pa. Apr. 22, 2010) ("Where a case has been removed

---

[8]    Because the Court finds that Plaintiff has not adequately alleged discriminatory intent or impact, the Court declines to address Defendants' arguments that Plaintiff has not suffered an adverse employment action.

17

from state court to federal court on the basis of federal question jurisdiction, the United States Supreme Court has recognized that a district court retains the discretion to remand that matter back to state court when all federal law claims have been dropped or dismissed from the action and only pendant state law claims remain."). In the Third Circuit, where the federal claims that gave the basis for original jurisdiction have been dismissed, a "district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). When "the case is nowhere close to trial, remand is the proper course." *Del Turco v. Randolph Twp. Police Dep't*, No. 18-5086, 2020 WL 999210, at *14 (D.N.J. Mar. 2, 2020).

The Court independently concludes that remand of the remainder of Plaintiff's claims in this case to state court is appropriate here. All of the federal claims in this matter have been dismissed, leaving only Plaintiff's state-law claims (Counts I, II, III, IV, V, VI, and X). Because Plaintiff and Defendants are not alleged to be diverse (*see generally* Compl.; *see also* D.E. No. 1, Notice of Removal, at 1 (justifying removal only on "the basis of federal question jurisdiction and supplemental jurisdiction")), the only potential basis for this Court's jurisdiction over Plaintiff's remaining claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367, which is discretionary. *See Monk v. New Jersey*, No. 14-1399, 2014 WL 4931309, at *3 (D.N.J. Oct. 2, 2014).

Here, remand appears the appropriate course, rather than retaining supplemental jurisdiction under § 1367. No federal claims remain, and Plaintiff initially filed this action in state court. Further, the case is at the pleading stage, rather than close to trial. The Court cannot discern any significant considerations of fairness or economy that would weigh in favor of retaining jurisdiction here. Thus, the Court will remand Plaintiff's state law claims (Counts I, II, III, IV, V,

VI, and X). However, because Plaintiff's federal claims were dismissed without prejudice, the possibility remains that Plaintiff could amend her Complaint to state a viable federal claim. The remand order shall thus be held in abeyance for 30 days, to accommodate the filing of an amended complaint. *See Del Turco*, 2020 WL 999210 at *15 (dismissing federal claims, ordering remand of remaining state law claims, and holding remand order in abeyance pending potential motion to amend); *Baldini v. Sussex Cty. Charter Sch. for Tech.*, No. 17-5547, 2018 U.S. Dist. LEXIS 104082, at *13–14 (D.N.J. June 19, 2018) (dismissing federal claims and giving the plaintiffs a limited time period to amend their complaint to reassert federal claims before remanding); *Wise v. Estes*, No. 10-0481, 2010 WL 2757273, at *7 (D.N.J. July 6, 2010) ("Plaintiffs shall have fourteen (14) days to file an amended complaint curing the deficiencies in the federal claims. If an amendment is not filed within this time, Plaintiffs' [federal] claims shall be dismissed with prejudice, and the Court shall enter an Order remanding the remaining state law claims to the Superior Court of New Jersey.").

### IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss the Complaint. (D.E. No. 6). Plaintiff's FMLA claims (Count VII) and Title VII claims (Count XI) are dismissed *without prejudice*. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims (Counts I, II, III, IV, V, VI, and X). Plaintiff shall have 30 days from the date of this opinion to amend the Complaint to assert a viable federal claim. If Plaintiff does not so amend within 30 days, or if Plaintiff informs the Court in writing before the 30 days are up that she will not so amend, the Court will remand the remaining claims in this matter (Counts I, II,

III, IV, V, VI, and X) to the Superior Court of New Jersey. An appropriate Order accompanies this Opinion.

*/s/ Esther Salas*

Dated: August 15, 2024

Esther Salas, U.S.D.J.